

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 313 | **DATE** | 10/11/2000 |
| **CASE TITLE** | Herman C. Jones, Jr vs. Property Management One | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Defendant's motion for summary judgment (8-1) is granted. Enter memorandum and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 1 2 2000 | 16 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| SLB | courtroom deputy's initials | EC-7 FILED FOR DOCKETING 00 OCT 11 PM 2:29 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HERMAN C. JONES, JR.,

                    Plaintiff,

        -vs-

PROPERTY MANAGEMENT ONE, LTD.,

                    Defendant.

No. 00 C 313

JUDGE GEORGE W. LINDBERG

**DOCKETED**

OCT 1 2 2000

## MEMORANDUM AND ORDER

Plaintiff, Herman C. Jones, Jr., was terminated as an employee of defendant, Property Management One, Ltd., in 1999. Plaintiff sued his former employer, alleging that defendant violated its collective bargaining agreement with Local 1 of the Service Employees International Union (the "Union") when it discharged plaintiff, and that the Union (which is not a party to this action) breached its duty of fair representation by not pursuing plaintiff's grievance. Defendant has moved for motion for summary judgment. Defendant's motion for summary judgment is granted.

Defendant is a real estate management firm that manages residential properties in the Chicagoland area, including a property known as Noble Square Cooperative ("Noble Square"). On January 5, 1999, plaintiff was hired as head of maintenance at Noble Square. Plaintiff reported directly to Rosemary Collins ("Collins"), the Resident Manager for Noble Square. As part of his job, plaintiff performed routine and requested maintenance and upkeep of the common areas and owners' units at Noble Square. In doing so, plaintiff had regular contact with the unit owners, and understood the importance of being responsive to the unit owners' maintenance



requests. Plaintiff understood that the "buck" stopped with him, and that if work orders were not being filled, he was ultimately responsible.

After the plaintiff was hired, Collins received complaints from Noble Square residents and employees about plaintiff's performance as head of maintenance. These complaints of plaintiff's performance were detailed, in part, in memoranda, letters and reports of Noble Square residents and employees. For instance, Noble Square residents sent several letters to Collins about the performance of plaintiff. On May 5, 1999, Collins received a letter from Ravinna Wills ("Wills"), a resident at Noble Square. Wills reported plaintiff's alleged failure to take care of items in need of repair in her unit despite his being aware of the issues for almost two months. Wills indicated that she had several problems with plaintiff while he was at Noble Square and that Noble Square should "seriously consider making some adjustments in the maintenance department."

On May 19, 1999, Collins received a letter from Melody Wooten ("Wooten"), another tenant complaining about plaintiff's job performance. Wooten complained of a work order that had been outstanding for several months. Wooten noted that plaintiff "consistently" ignored her and did not even attempt to schedule the work. Wooten concluded: "I DO NOT WANT TO COMMUNICATE WITH MR. JONES BECAUSE OF HIS ARROGANT ATTITUDE!!!" (caps in original.)

On May 19, 1999, Collins received another complaint from another resident about plaintiff. The resident, Chris Johnson, complained about plaintiff's failure to complete work he had been earlier asked to do, which resulted in physical damage to the unit in question.

2

Noble Square employees likewise complained about plaintiff's performance. For example, Collins states in her affidavit that she told plaintiff of the need to pour a chemical down the drains at Noble Square as a preventative maintenance measure, but plaintiff failed to follow this instruction. On April 12, 1999, Collins wrote a disciplinary report about this incident. In March 1999, Collins states in her affidavit that she spoke to plaintiff about inspecting and checking the gutters in the town homes at Noble Square, but as of early April 1999, plaintiff still had not completed this task.

On April 30, 1999, Collins received a memo from Lisa Hutchinson ("Hutchinson"), the Office Manager at Noble Square, complaining about plaintiff's interaction with a resident of Noble Square. In the memo, Hutchinson reported to Collins about an alleged incident involving plaintiff, the resident, and Latasha Burchett ("Burchett"), the secretary at Noble Square. The incident, as reported to Collins, was as follows: Plaintiff was not happy about Burchett scheduling a work order from a resident to be completed by plaintiff after 5:00 p.m. Burchett informed plaintiff of the need to complete the work order after 5:00 p.m. because of the resident's sensitivity to having someone in her unit when she was not there. During a meeting between plaintiff, Burchett and Wooten, it was reported to Collins that plaintiff became hostile and loud. It also was reported to Collins that plaintiff said that he would not accommodate the resident and that she would have to make herself available during the hours his staff was working. Hutchinson further reported to Collins that this was not the first incident where she gave plaintiff an instruction he did not follow.

In his deposition, plaintiff testified that the content of these complaints are false. Plaintiff further testified in his deposition that he was fired because a "click" of Noble Square office employees retaliated against him for: (1) complaining to Charles Warrick ("Warrick"), the Property Manager at Noble Square, that Collins called him a "big old nigger" (an allegation that Collins denies); (2) disciplining Noble Square employees who were friends of, or related to, Collins or Hutchinson. However, there is no dispute that these complaints about plaintiff's job performance were made available to the Union before it made its decision not to proceed with plaintiff's grievance.

On May 19, 1999, defendant terminated plaintiff from his position as head of maintenance at Noble Square effective May 21, 1999. Plaintiff was advised of this in writing.

On May 25, 1999, plaintiff filed a grievance with the Union regarding his discharge from his position as head of maintenance at Noble Square. Plaintiff claimed that he was terminated by defendant without just cause. Article V, Section 2 of the Collective Bargaining Agreement ("CBA") states that "[n]o employee shall be disciplined or discharged except for just cause." The CBA does not define "just cause." However, the CBA states that in cases of "gross misconduct," which the agreement defines as including "insubordination," employees "may be subject to summary discharge without prior notice." The CBA adds that "[i]n all other cases, employees shall be entitled to fourteen (14) days written notice of discharge. . . ." In his deposition, plaintiff testified that his understanding of the term "insubordination" included: not following direction or orders from one's supervisors; being disrespectful to one's supervisors or tenants; not doing one's job; or using profanity or being disrespectful.

4

Remzi Jaos ("Jaos"), plaintiff's Union representative, and Linda Clark ("Clark"), a member of the Union's legal staff, undertook an investigation on behalf of the Union into plaintiff's grievance and his claim that he was terminated by defendant without just cause. The investigation took place from May 25 through July 13, 1999. Walter Misetic ("Misetic"), the director of the apartment division for the Union, Jaos and Clark were jointly involved in making a determination on behalf of the Union about whether to proceed or not with plaintiff's grievance. On June 17, 1999, a meeting was held between plaintiff, Jaos, Warrick, and Collins. Plaintiff met with Jaos in advance of this meeting and explained to Jaos his position. Jaos also met privately with Warrick and Collins at the June 17 meeting.

At the June 17 meeting, Warrick and Collins presented defendant's case as to the reasons for plaintiff's termination, and provided all the documents discussed to the Union and to plaintiff. At the June 17 meeting, Collins and Warrick answered questions asked by Jaos. Plaintiff was given an opportunity by Jaos, Warrick and Collins at the June 17 meeting to respond to each of the allegations made against him. In his deposition, plaintiff testified to the following concerning his treatment by the Union: (1) he was reasonably satisfied that he was able to tell his side of the story to Jaos, Warrick and Collins at the June 17 meeting; (2) he has no reason to believe that Jaos or Misetic did not like him, or that they had any motive to treat plaintiff badly; (3) he has no reason to believe that Jaos or Misetic had a motive to treat him differently than any other Union member; (4) he trusted Jaos as his Union representative, and he knew Jaos and Misetic to be honest persons; (5) he does not know of anyone at the Union who

would have any motive to treat him unfairly or poorly; (6) he does not believe that the Union violated the CBA.

As a result of its investigation and based upon all of the information presented, the Union determined that the resident and other complaints were legitimate indications of plaintiff's poor job performance, including his insubordination, failure to follow instructions and refusal to work. Jaos also determined that plaintiff had no legitimate or adequate response to the complaints that would be presented at an arbitration proceeding. Jaos also determined that plaintiff was not being forthright about the incidents in question.

Moreover, the Union believed there to have been credible and substantial evidence that defendant had just cause to discipline and terminate plaintiff from his position at Noble Square. In the Union's experience, "undue negligence", carelessness or wanton disregard for the employer's property or operations will provide just cause for disciplining an employee. The Union determined that just cause in this case included plaintiff's insubordination, failure to follow instructions, refusal to work (after 5:00 p.m.) and poor job performance.

Jaos communicated all of the foregoing information to his supervisor, Misetic, who agreed that the Union could not successfully pursue plaintiff's grievance. Nancy Cross, the Union's vice president for the building service division, informed plaintiff of the Union's determination not to proceed with his grievance by letter dated July 13, 1999.

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c). The court must review the evidence and draw all permissible inferences in the light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The nonmoving party must then come forward with specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). "The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial." <u>Weicherding v. Riegal</u>, 160 F.3d 1139, 1142 (7th Cir. 1998). A mere scintilla of evidence is not sufficient to defeat a proper motion for summary judgment. <u>Anderson</u>, 477 U.S. at 252.

The threshold issue in this case is whether the Union breached its duty of fair representation.

> In order to succeed on a section 301 claim against an employer for breach of its collective bargaining agreement, the employee must first establish that the union breached its duty of fair representation.

<u>McKelvin v. E.J. Brach Corp.</u>, 124 F.3d 864, 869 (7th Cir. 1997). <u>See also</u> <u>Brazinski v. Amoco Petroleum Additives Co.</u>, 6 F.3d 1176, 1179 (7th Cir. 1993). Consequently, plaintiff must first show that the Union breached its duty of fair representation before he can prevail on his claim against defendant, even if his claim against defendant is a "just one." <u>Brazinski</u>, 6 F.3d at 1179. (An employee "cannot show just that the company violated the collective bargaining agreement.

He must also show that by arbitrarily refusing to press his grievance the union violated its duty to represent all members of the bargaining unit fairly.")

A union breaches its duty of fair representation if its actions are arbitrary, discriminatory, or taken in bad faith. Air Line Pilots v. O'Neill, 499 U.S. 65, 67 (1991); McKelvin, 124 F.3d at 867. "[T]o defeat a motion for summary judgment, [an employee] must proffer evidence supporting at least one of these elements." Filippo v. Northern Indian Pub. Serv. Corp., 141 F.3d. 744, 748 (7th Cir. 1998). In his complaint, plaintiff argues that the Union breached its duty of fair representation in one or more of the following ways: (1) by refusing to demand arbitration of plaintiff's grievance; (2) by failing to reasonably investigate the claims of the defendant alleged to be the cause of plaintiff's termination; (3) by failing to follow the procedures set forth in Article 16 of the CBA; (4) by failing to prohibit defendant from requiring plaintiff to perform tasks in violation of the terms of the CBA; (5) by failing to require defendant to follow the terms and procedures set forth in the CBA; and (6) by otherwise failing to afford plaintiff reasonable representation through plaintiff's grievance proceedings and termination. However, plaintiff does not explain how any of these alleged failures of the Union, even if true, constitute a breach of its duty of fair representation. Phrased another way, plaintiff does not state how these alleged failures of the Union's were arbitrary, discriminatory, or taken in bad faith. See Walker v. Henderson, 1999 WL 39545 at *7 (N.D. Ill. Jan. 20, 1999) ("[T]he problem with [the employee's] statements concerning the ways in which NALC breached its duty of fair representation is that they are all conclusory statements that the NALC could have done a better job by performing these items. [The employee] does not explain, however, why a failure to

perform these actions amounted to a breach of NALC's duty of fair representation.")

Nonetheless, this court has reviewed the factual record to determine if the evidence supports at least one of the elements. It does not.

A "review of whether a union acted arbitrarily in deciding not to pursue a grievance . . . is 'highly deferential.'" McKelvin, 124 F.3d at 867, quoting Air Line Pilots, 499 U.S. at 78. Courts should not "substitute their judgment for that of the union, even, if, with the benefit of hindsight, it appears that the union could have made a better call." Ooley v. Schwitzer Division, 961 F.2d 1293, 1302 (7th Cir.), cert. denied, 506 U.S. 872 (1992). "[T]he test for arbitrariness in fair representation claims is quite forgiving." Trnka v. Local Union No. 688, 30 F.3d 60, 61 (7th Cir. 1994). A union's actions are considered arbitrary only if they are "so far outside 'wide range of reasonableness' as to be irrational." Air Line Pilots, 499 U.S. at 67 (citation omitted); Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1176 (7th Cir. 1995). Although a union must provide "'some minimal investigation of employee grievances' . . . the thoroughness of this investigation depends on the particular case and 'only an egregious disregard for union member's rights constitutes a breach of the union's duty.'" Garcia, 58 F.3d at 1176 (quoting Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483 (9th Cir. 1985)). The employee's burden "goes considerably beyond the requirements of a malpractice suit." Id.

In the summary judgment context, "so long as a colorable argument could be made at the time of the union's decision to drop its support that the grievance is meritless (and the union did not treat substantively similar grievances differently from the plaintiff's), the decision cannot be regarded as arbitrary." Trnka, 30 F.3d at 61; McKelvin, 124 F.3d at 867-68. In short, for an

employee to satisfy his burden on summary judgment, the employee must show that the union's position "could eventually be deemed not even colorable." Id. Plaintiff did not meet this burden.

Initially, the Union's investigation of plaintiff's grievances satisfies the "minimal investigation" requirement. The Union interviewed plaintiff, Collins, and Warrick. Collins had first-hand knowledge of plaintiff's work performance, and had written a disciplinary report on plaintiff. The Union also reviewed the memoranda, reports, and letters that were written by Noble Square residents and employees that complained of plaintiff's job performance. Plaintiff was also given an opportunity by the Union to tell his side of the story, and respond to each of the allegations made against him.

A more thorough investigation may have included interviews with Noble Square residents and other Noble Square employees. The Union apparently did not interview the residents that had written critiques of plaintiff's performance, or other Noble Square employees that had complained about plaintiff's performance. However, the Union is not held to such a high standard. See Garcia, 58 F.3d at 1178 (the union is "not held to the standard of the ideal lawyer.") Only an investigation that shows "'an egregious disregard for union member's rights constitutes a breach of the union's duty.'" Garcia, 58 F.3d at 1176 (quoting Castelli, 752 F.2d at 1483.)

Moreover, based on its investigation, the Union's decision to not proceed with the grievance was not irrational. At the June 17 grievance hearing, the Union heard evidence that plaintiff was insubordinate, failed to follow instructions, refused to work after 5:00 p.m., and had

poor job performance. The Union could reasonably conclude that the alleged conduct of plaintiff, if true, justified plaintiff's termination for a number of reasons. First, the CBA states that Noble Square employees can only be terminated for "just cause." The CBA then states that Noble Square employees can be terminated without written notices in cases of "gross misconduct", which it defines as to including "insubordination." It follows logically the CBA views "insubordination" as constituting "just cause." Plaintiff himself agrees that not following directions from one's supervisors, being disrespectful to one's supervisors, and not doing one's job constitutes insubordination – the very types of conduct that were alleged against plaintiff. Second, the Union's prior experience was that "undue negligence", carelessness, or wanton disregard for the employer's property or operations would provide just cause for disciplining an employee. The allegations lodged against plaintiff can reasonably be considered to fit these categories. In fact, plaintiff never claims that the complaints against him were not sufficient, if proved completely accurate, to constitute just cause.

What plaintiff does claim is that the allegations against him are false. However, the question before this court is not whether these complaints are true or not. "Instead, we must consider whether a reasonable jury could conclude that the union's decision was irrational." McKelvin, 124 F.3d at 868. The Union heard both plaintiff' account and defendant's account before making its decision not to proceed with the grievance. It was not irrational for the Union to conclude that defendant's "account was more credible and would undermine the union at arbitration." Id.

Having rationally concluded P.M. One's account had credibility, the Union could make a "colorable" argument at the time it decided not to pursue plaintiff's grievance that the grievance was meritless. McKelvin, 124 F.3d at 867-68. Consequently, since plaintiff did not offer any evidence that substantially similar grievances were treated differently, plaintiff has not met his burden of showing that there is evidence from which a trier of fact could decide that the Union's actions were arbitrary.

Unlike a claim of arbitrariness, which "requires inquiry into objective adequacy of union action," a claim of "unfair representation as discrimination or bad faith requires inquiry into the subjective motivation behind union action." Trnka, F.3d at 63. In this case, plaintiff does not offer any evidence to support a finding that the Union officials acted with an improper motive. See Walker, 1999 WL 39545 at *6. (For a claim of bad faith or discrimination "an employee must show that union officials acted with an improper motive and must be able to point to specific facts that support the finding of such a motive.") In fact, plaintiff admitted that he does not know of anyone at the Union who would have any motive to treat him unfairly or poorly. See Adamiec v. Gas Workers Union, Local 18007, 18 F.Supp.2d 855, 872-73 (N.D. Ill. 1998), which cites with approval Hill v. Sanford Corp., 1997 WL 164002 (N.D. Ill. Mar. 27, 1997), for "finding no evidence of bad faith or discrimination where plaintiff admitted that he 'knows of no motive why the Union discriminated against him'." Consequently, plaintiff has not met his burden of showing that there is evidence from which a trier of fact could decide that the Union's actions were discriminatory, or taken in bad faith.

Accordingly, defendant is entitled to summary judgment in this action.

00 C 313

ORDERED: The motion of defendant, Property Management One, Ltd., for summary judgment is granted.  Judgment in favor of defendant and against plaintiff, Herman C. Jones, Jr., will be set forth on a separate document and entered in the civil docket.  Fed.R.Civ.P. 58, 79(a).

ENTER:

GEORGE W. LINDBERG
District Judge

DATED: ~~OCT 10 2000~~
OCT 1 0 2000